Richard P. Doyle, Jr. (SBN 112459)
rdoyle@doylelow.com
Jaime B. Herren (SBN 271680)
jherren@doylelow.com
DOYLE LOW LLP
3640 Mt. Diablo Boulevard, Suite 202
Lafayette, CA 94549
925.295.1805 telephone
925.253.1071 fax

Attorneys for Plaintiff
LITTLE WISHES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LITTLE WISHES,<br>A Non-Profit California Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>LITTLE WISH FOUNDATION,<br>A Non-Profit Indiana Corporation,<br><br>        Defendant. | Case No.  16-cv-06613-MMC<br><br>**NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing: February 24, 2017<br>Time: 9:00 am<br><br>Honorable Maxine M. Chesney |

PLEASE TAKE NOTICE that on February 24th, 2017 at 9:00 a.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable Maxine M. Chesney, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, Plaintiff LITTLE WISHES will, and hereby does, move the court, pursuant to 35 U.S.C. § 1125 (a), Cal. Bus. & Prof. Code 17200 *et seq.,* and Civ. L.R. 7, to preliminarily enjoin Defendant LITTLE WISH FOUNDATION, INC. dba LITTLE WISH ("LITTLE WISH"), during the pendency of this matter, from:

(a) using the words LITTLE WISH(ES) alone, or in combination with other terms, to promote its business services or goods;

(b) using the words LITTLE WISH(ES) alone, or in combination with other terms, in metatags; and

(c) using any domain containing the words "LITTLE WISH(ES)" alone, or in conjunction with other words, in connection with accepting and/or administering charitable funds and/or gifts for pediatric patients.

LITTLE WISHES' motion is based upon this memorandum, as well as the declaration and exhibits submitted herewith.

DOYLE LOW LLP

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. iii

Table of Authorities ........................................................................................................ iv

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................1

I.     SUMMARY OF DISPUTE ......................................................................... 1

II.    ISSUES BEFORE THE COURT ............................................................... 1

III.   FACTUAL BACKGROUND ...................................................................... 2

    A.   The History of LITTLE WISHES ................................................... 2

    B.   Defendant LITTLE WISH's Use of "LITTLE WISH" ................... 4

    C.   The Dangers of Confusion ............................................................. 6

    D.   Relief Sought ................................................................................. 7

IV.   LEGAL ARGUMENT ................................................................................ 8

    A.   The Standards for Granting Preliminary Injunction. ..................... 8

        1.   Ownership and Validity ..................................................... 9

        2.   Likelihood of Confusion ................................................. 11

        3.   Summary of Sleekcraft factors ........................................ 19

        4.   Irreparable Injury ............................................................ 19

    B.   Alternative Standard for Preliminary Injunction. ....................... 20

        1.   Serious Questions are Raised ........................................... 21

        2.   The Balance of Hardships Tips in Plaintiff's Favor .......... 22

V.    CONCLUSION ........................................................................................ 23

DOYLE LOW LLP

<u>**TABLE OF AUTHORITIES**</u>

**CASES**

*AMF v. Sleekcraft Boats,*
  599 F.2d 341 (9th Cir. 1979) ........................................................................ passim

*Anheuser-Busch v. The Customer Co.,*
  947 F. Supp. 422 (N.D. Cal. 1996) .............................................................. 13

*Arcamuzi v. Continental Air Lines, Inc.,*
  819 F.2d 935 (9th Cir. 1987) ......................................................................... 9

*Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Com.,*
  289 F.2d 665 (C.C.P.A. 1961). ...................................................................... 11

*Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.,*
  408 F. Supp. 1219 (D. Colo. 1976), *aff'd and award modified,* 561 F.2d 1365
  (10th Cir. 1977), *cert. dismissed,* 434 U.S. 1052 (1978) ........................... 10, 12, 22

*Bristol Meyers Squibb Co. v. McNeil P.P.C. Inc.,*
  973 F.2d 1033 (2d Cir. 1992).......................................................................... 20

*Brookfield Commnc'n, Inc. v. West Coast Entm't Corp.,*
  174 F.3d 1036 (9th Cir. 1999) ....................................................................... passim

*Cal. Cedar Products Co. v. Pine Mt. Corp.,*
  724 F.2d 827 (9th Cir. 1984) ......................................................................... 8

*Century 21 Real Estate Corp. v. Sandlin,*
  846 F.2d 1175 (9th Cir. 1988) ............................................................. 10, 14, 17, 25

*Citibank N.A., v. City Bank of San Francisco,*
  206 USPQ 997 (N.D.Cal. 1980) .................................................................... 25

*Citibank, N.A. v. Citibank Group, Inc.,*
  724 F.2d 1540 (11th Cir. 1984) ..................................................................... 15

*Dr. Seuss Enters. L.P. v. Penguin Books U.S.A. Inc.,*
  109 F.3d 1394 (9th Cir. 1997) ....................................................................... passim

*E & J Gallo Winery v. Gallo Cattle Co.,*
  967 F.2d 1280 (9th Cir. 1995) ....................................................................... 13

*Earth Tech. Corp. v. Envtl. Research of Tech., Inc.,*
  222 USPQ 585 (C.D. Cal. 1983)............................................................. 17, 21

DOYLE LOW LLP

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

*Fleischmann Distilling Corp. v. Maier Brewing Co.,*
    314 F.2d 149 (9th Cir. 1963) ........................................................... 25

*GoTo.com, Inc. v. Walt Disney Co.,*
    202 F.3d 1199 (9th Cir. 2000) ..................................................... 13, 16

*Henry Siegel Co. v. M&R Int'l Mfg. Co.,*
    4 U.S.P.Q.2d. (BNA) 1154 (T.T.A.B. 1987) ....................................... 15

*Hewlett-Packard Co. v. Packard Press, Inc.,*
    281 F.3d 1261 (Fed. Cir. 2002) ........................................................ 13

*In re Chatam Int'l,*
    380 F.3d 1340 (Fed. Cir. 2004) ........................................................ 13

*Int'l Order Of Job Daughters v. Lindeburg,*
    633 F.2d 912 (Fed. Cir. 1981) ............................................................. 8

*JayAIR Corp. v. Muka Indust.,*
    33 U.S.P.Q.2d 1304 (C.D.Cal. 1994) ............................................. 16, 24

*Levi-Strauss & Co. v. Blue Bell, Inc.,*
    778 F.2d 1352 (9th Cir. 1985) ...................................................... 12, 13

*McGregor-Doniger, Inc. v. Drizzle, Inc.,*
    599 F.2d 1126 (2d Cir. 1979) ........................................................... 20

*Metro Publ'g, Ltd. v. San Jose Mercury News,*
    987 F.2d 637 (9th Cir.1993) ............................................................ 21

*Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,*
    856 F.2d 1445 (9th Cir. 1988) ........................................................... 9

*Playboy Enter. v. Netscape Commc'n Corp.,*
    354 F.3d 1020 (9th Cir. 2004) ...................................................... 14, 19

*Rodeo Collection, Ltd. v. West Seventh,*
    812 F.2d 1215 (9th Cir. 1987) ........................................................... 9

*Sengoku Works Ltd. v. RMC Int'l, Ltd.,*
    96 F.3d 1217 (9th Cir. 1996) ............................................................ 11

*Surf Line Hawaii Ltd. V. Ahakuelo,*
    13 U.S.P.Q.2d. (BNA) 1975 (D. Haw. 1989) ...................................... 15

DOYLE LOW LLP

## STATUTES

15 United States Code section 1114 ................................................................ 9

15 United States Code section 1125 ................................................................ 9

California Business & Professions Code sections 17200 *et seq.* ................................ 10

Federal Rule of Civil Procedure, Rule 65 ......................................................... 9

## TREATISES

3 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,*
§ 11.76 (rev. ed. 1994) ......................................................................... 16

3 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,*
§ 23.01[1] (rev. ed. 1994) ...................................................................... 10

3 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,*
§ 23.10 (rev. ed. 1994) ......................................................................... 12

3 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition,*
§ 23.97 (rev. ed. 1994) ......................................................................... 20

DOYLE LOW LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF DISPUTE

While their histories and longevity differ, both parties' organizations were created with the intention of bringing comfort and happiness to hospitalized children. LITTLE WISHES started in San Francisco in 2003; and it has operated and expanded for the last fourteen years, having thus far delivered, as is its goal, almost 10,000 charitable gifts to hospitalized children. Declaration of Laura Euphrat filed in Support of Motion for Preliminary Injunction ("Euphrat Decl.") ¶ 3.

In 2010, Defendant LITTLE WISH started a virtually identical program in Indiana in response to a Parade Magazine article that its founders had seen about LITTLE WISHES. Euphrat Decl. ¶¶ 21-22. LITTLE WISH, no longer regional in focus, is apparently now expanding and seeking national attention, in ways that are causing confusion among patients in need, their families, volunteers, and the generous people whose donations make delivery of these charitable services possible.

The intention of this motion is to maintain the status quo, and potentially assist the parties towards reaching a resolution of this dispute by clarifying the senior trademark rights of LITTLE WISHES. This motion does not ask for injunctive relief that would cease or disrupt Defendant's operation as a charitable organization; but rather it seeks to assure that Defendant operates in a manner that prevents confusion among relevant members of the public, so that both parties can continue to do positive work.

## II. ISSUES BEFORE THE COURT

(1) Is Plaintiff likely to succeed on the merits in its contention that Defendant's use of the designation LITTLE WISH is likely to cause confusion with Plaintiff's LITTLE WISHES trademark, and that such use is causing irreparable harm to Plaintiff, thereby warranting a preliminary injunction against Defendant's use of the designation LITTLE WISH during the

DOYLE LOW LLP

1    pendency of this action?

2        (2) Alternatively, does Defendant's use of the designation LITTLE WISH raise serious

3 questions for litigation and does the balance of hardships tip sharply in Plaintiff's favor, thereby

4 warranting a preliminary injunction against Defendant's use of the designation LITTLE WISH

5 during the pendency of this action?

6

7 **III.**         **FACTUAL BACKGROUND**

8        **A.**      **The History of LITTLE WISHES**

9        Plaintiff LITTLE WISHES is a 501(c)(3) nonprofit organization founded in 2003 by two

10 San Francisco pediatric nurses at California Pacific Medical Center ("CPMC"), Laura Euphrat,

11 RN ("Laura") and Joanne Davantes, RN ("Joanne"). Euphrat Decl. ¶ 2; Ex. A, thereto.

12        In the summer of 2002, an 8-year-old baseball fan was diagnosed with a rare, aggressive

13 type of liver cancer. Euphrat Decl. ¶ 4. His days in the hospital at CPMC soon turned into

14 months. As fall approached and playoff baseball revved up, he inspired the hospital staff with

15 his infectious love of the San Francisco Giants. The staff helped decorate his hospital room with

16 a cornucopia of Giants memorabilia. As it looked like the Giants were going to make it to the

17 World Series that year, the staff would sneak off to his room to watch moments of the playoff

18 games with him. *Id.* at ¶ ¶4-6.

19        This young patient was able to see his favorite team make it to the World Series just

20 weeks before he passed away, a dream come true for an avid baseball fan. *Id.* However, it was

21 the littlest things that brought great happiness to him during his most difficult and painful stay in

22 the hospital—the spontaneous visits from staff, the Giants' pennants that they tacked up in his

23 room. Even a simple trip to the hospital gift shop in his wheelchair, while hooked up to his

24 oxygen tank, to eye the candy was a great adventure and distraction for him. He showed

25 everyone that it is often a kind gesture, a simple "little" gift that can bring so much joy to a

26 hospitalized child. Two of the CPMC nurses who cared for him were Laura and Joanne. *Id.*

27        In November 2002, this wonderful 8 year-old passed away, and Laura and Joanne

DOYLE LOW LLP

decided to create LITTLE WISHES to bring comfort and happiness to other hospitalized children.  LITTLE WISHES provides charitable gifts that cost small amounts, but have significant value to particular seriously ill children during their hospitalization. *Id*. at ¶ 6.

These children undergo treatments that are often rigorous, painful, and lasting in effect—both physically and mentally. Laura and Joanne learned that the delivery of a modest gift greatly eased hospitalized children's pain, and served to improve their spirits and outlook during their hospitalization.  Today LITTLE WISHES renders services by asking the hospitalized children what brings them joy, and what they are passionate about; then the volunteers try to match a gift with that child. Euphrat Decl. ¶ 7.

Examples of charitable gifts include books, music, DVD's, art supplies, clothing, toys and games. All charitable gifts are delivered in the hospital with the purpose of bringing comfort and distraction to the child enduring medical treatments.  A unique part of the LITTLE WISHES program is that a child may request another charitable gift fourteen days after receiving a first charitable gift! This repetition of joy gives the child a significant and happy event to anticipate. Euphrat Decl. ¶ 8.

For the last fourteen years, blood, sweat and tears have gone into making LITTLE WISHES what it is today.   Joanne, Laura and their teams of volunteers work regular full time jobs, and then drive to toy stores all over San Francisco and Marin County, or search the Internet, to look for specific charitable gifts for a child.  *Id*. at ¶¶ 9-10.

An example of this volunteer spirit is Lori Johanson, another LITTLE WISHES volunteer who assisted with bookkeeping and tax returns while working full time at Citigroup and raising four boys.  She also did what was required to establish LITTLE WISHES as a California Nonprofit Public Benefit Corporation, and applied for and received its 501(c)(3) exempt status.  She has likewise spent thousands of her free hours making certain every penny donated was spent on a child's wish.  *Id*. at ¶ 11.

Over the years LITTLE WISHES has delivered almost 10,000 charitable gifts while having accepted donations from persons in 38 States, Washington D.C. and London.   LITTLE

DOYLE LOW LLP

WISHES operates 24/7 and does not close for weekends or holidays. *Id*. at ¶¶ 3, 12-13.

As a result, the relevant public recognizes LITTLE WISHES as a unique organization that accepts and administers charitable funds and gifts for the benefit of pediatric patients who suffer from chronic and critical illnesses such as cancer, cystic fibrosis, cerebral palsy, lost limbs and more. Euphrat Decl. ¶ 14. Hospitals served by LITTLE WISHES include **California Pacific Medical Center** (San Francisco, California); **UCSF Benioff Children's Hospital** (San Francisco, California); **Sutter Children's Hospital** (Sacramento, California) and **Sacred Heart Children's Hospital** (Spokane, Washington). Euphrat Decl. ¶ 15.

### B.    Defendant LITTLE WISH's Use of "LITTLE WISH"

LITTLE WISHES was unaware of the existence of Defendant LITTLE WISH until November 8, 2015, at which time a LITTLE WISHES' volunteer sent an email entitled "HAVE YOU SEEN THIS? SHE COPIED YOU!" and included the following message: "The thing I worry about with this is that people may intend to donate to you and donate to this one." Euphrat Decl. ¶¶ 16; Ex. B, thereto.

Since then, Plaintiff's principles have learned the following. LITTLE WISH is an Indiana non-profit corporation. LITTLE WISH's website explains that it too is a 501(c)(3) non-profit organization and provides charitable gifts to children with cancer. The website notes that (in a manner similar to the almost 10,000 gifts delivered by LITTLE WISHES) since 2010 it has delivered more than 775 gifts to children across Indiana and four other states. *Id*. at ¶ 17; Ex. C, thereto.

While LITTLE WISH started in 2010 focused in Indiana, it appears that in the last year it has decided to expand, and is now seeking national advertising and attention. In fact, LITTLE WISH now claims, via its website, to be active at Lucile Packard Children's Hospital Stanford, located in Palo Alto, California, an institution which has had a collaborative relationship with CPMC (the very heart of LITTLE WISHES operations) to increase Northern California children's access to highly specialized inpatient hospital care, since 2012. *Id*. at ¶¶ 2, 18; Ex. D,

DOYLE LOW LLP

thereto.

Rendering the matter more confusing to the public, in its advertising, Defendant LITTLE WISH has used the plural term LITTLE WISHES interchangeably to reference the work it is doing.

Please note, as an exemplar, the following advertisement from Defendant's website describing a "Tailgate for Little Wishes":



**Image 1**. "Tailgate for Little Wishes," Euphrat Decl. ¶ 19; Ex. E, thereto.

Defendant adopted the name LITTLE WISH with full knowledge of the existence and ongoing operation of Plaintiff LITTLE WISHES. Euphrat Decl. ¶¶ 20-21. LITTLE WISHES was highlighted in a 2010 Parade Magazine article. Euphrat Decl. ¶ 21 and Ex. F thereto. The evidence shows that viewing it was the genesis for the formation of LITTLE WISH.

As explained on the Defendant's website: "Little Wish" is a nonprofit 501(c)3 organization that was started by Liz Niemiec, at age 17, in the memory of Max Olson. "At age one, Max was adopted from Russia and was brought to the Olson's loving home." Euphrat Decl. ¶ 21; Ex. C, thereto. After viewing the Parade Magazine article, the father of Max Olson sent

DOYLE LOW LLP

LITTLE WISHES an email that said: "Our son's battle with cancer has inspired my wife's colleague to create a foundation very similar to yours here in Indiana." *Id;* Ex. G, thereto.

Defendant's founders not only created "a foundation very similar to [Plaintiff] in Indiana," (as was its intention stated in the e-mail below), but took Plaintiff's name as well, without permission. *Id.*; see also, Image 2 (below). That is the source of the confusion that exists today.



**Image 2.** Email dated May 25, 2010. Euphrat Decl. ¶ 21 and Ex. G thereto.

## C.     The Dangers of Confusion

Both parties exist for the benefit of children and both do fine work. That is not a problem, but this is. Due to Defendant's drive for national press, and expansion beyond Indiana, the public has been, and is now, confused. Euphrat Decl. ¶ 22. There are many known examples of such confusion, and certainly many more that have not been ascertained yet. The confusion has already caused harm to children and families. A hospital staff member has improperly shared HIPPA information with the wrong party, having been confused between LITTLE WISHES and LITTLE WISH. *Id.* A child at Children's Hospital in Los Angeles did not receive a gift from LITTLE WISH, due to confusion that resulted from contacting LITTLE WISHES. *Id.* at ¶ 23. That child was requesting a laptop, which is not a gift that would come from LITTLE WISHES; and therefore, the family was confused by contacting LITTLE WISHES and presumably disappointed. *Id.*

DOYLE LOW LLP

Also, it is significant that both parties exist due to the generosity of donors. Money intended for one of the parties is already, repeatedly, ending up with the unintended other. If those donors are confused as to whom they are contacting, this will have a chilling effect as to giving. *Id*. at ¶ 24.

Moreover, indicative of the ongoing existence of confusion among the relevant public is that, in response to a recent TODAY SHOW interview in which Defendant LITTLE WISH personnel appeared, LITTLE WISHES received 16 email inquiries (on December 27th and 28th) from people all over the United States wanting to help, volunteer, and participate. Many noted, incorrectly, that they had seen LITTLE WISHES on the TODAY SHOW. *Id*. at ¶ 25. Of course, they had not. Similarly, LITTLE WISHES had three private messages on its Facebook page with people wanting to help after seeing the show, and 111 "Views" on that December 27th (a spike from its average daily "Views" of 10-20). *Id*. at ¶ 25-26.

Additionally, the responsiveness and credibility of these organizations is critical to their financial success. LITTLE WISHES is a totally volunteer program. There are no salaries paid, and there is no commercial overhead taken as to the funds donated that are intended for the benefit of pediatric patients suffering from chronic illnesses. Euphrat Decl. ¶ 28. The process of dealing with confusion (responding to erroneous inquiries, for example) pulls volunteers away from their mission of charitable giving. *Id*. at ¶ 29.

This confusion needs to be resolved, especially in light of LITTLE WISH's recent attempts to seek national notoriety. There is no justification for it to knowingly harm LITTLE WISHES, and adversely impact its 14 years of charitable giving.

## D. Relief Sought

Immediate relief enjoining Defendant from further exploitation of the LITTLE WISHES trademark is necessary to protect Plaintiff's goodwill and reputation, the HIPPA rights of affected children, and to avoid confusion among recipient families and donors alike. Such relief is especially urgent because Defendant's CEO has apparently set a personal agenda of national

DOYLE LOW LLP

recognition, despite knowing the great potential for additional confusion that exists. Her actions are increasing the false perception that Plaintiff's LITTLE WISHES charitable giving originates from Defendant. Euphrat Decl. ¶¶ 25-34.

Plaintiff requests a preliminary injunction prohibiting Defendant from:

(a) using the designation LITTLE WISH(ES) alone or in combination with other terms to promote its business services or goods;

(b) using the designation LITTLE WISH(ES) alone or in combination with other terms in metatags; and

(c) using any domain containing the words "LITTLE WISH(ES)" either alone or in conjunction with other words in connection with accepting and administering charitable funds and gifts for pediatric patients during the pendency of this matter.

## IV.        LEGAL ARGUMENT

### A.        The Standards for Granting Preliminary Injunction.

As stated in *Int'l Order Of Job Daughters v. Lindeburg,* 633 F.2d 912, 919 (Fed. Cir. 1981), "a trademark is a property right insofar as is necessary to prevent consumer confusion as to who produced the goods and to facilitate differentiation of the trademark owner's goods."

An essential remedy available to a trademark owner to enforce this right is injunctive relief, including a preliminary injunction. *See e.g. Cal. Cedar Products Co. v. Pine Mt. Corp.,* 724 F.2d 827 (9th Cir. 1984) (preliminary injunction against competitors to restrain use of trademark upheld on appeal); *see also, Dr. Seuss Enters. L.P. v. Penguin Books U.S.A. Inc.,* 109 F.3d 1394 (9th Cir. 1997), petition for cert. dismissed by, 118 S. Ct. 27 (1997).

Plaintiff seeks a preliminary injunction to prevent Defendant from further impairing or damaging Plaintiff's reputation as a charitable organization accepting and administering charitable funds and gifts for pediatric patients. The Court has the authority to grant a preliminary injunction in the exercise of its equitable powers under Fed. R. Civ. P. 65. Traditionally, this rule

DOYLE LOW LLP

has been interpreted to require the trial court to consider the likelihood that Plaintiff will prevail on the merits and the possible harm to the parties from granting or denying the injunctive relief. *Arcamuzi v. Continental Air Lines, Inc.,* 819 F.2d 935, 937 (9th Cir. 1987). To obtain this relief, Plaintiff must establish either: (1) a combination of likelihood of success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in its favor. *Arcamuzi,* 819 F.2d at 937; *Dr. Seuss,* 109 F.3d at 1397. "These are not two distinct tests, but rather the opposite ends of a single 'continuum in which the required showing of harm varies inversely with the required showing of meritoriousness.'" *Miss World (UK) Ltd. v. Mrs. America Pageants, Inc.,* 856 F.2d 1445, 1448 (9th Cir. 1988) *quoting Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir. 1987).

The legal standard governing the grant of preliminary injunctive relief for trademark infringement claims under Section 32 of the Lanham Act, and unfair competition claims under 43(a) of the Lanham Act and Cal. Bus. & Prof. Code § 17200 *et seq.*, requires a showing that a likelihood of confusion exists between Plaintiff's use of the LITTLE WISHES trademark and Defendant's use of the LITTLE WISH trademark and its references to LITTLE WISHES. *Dr. Seuss, supra,* 109 F.3d at 1403-1404; *Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175, 1178 and 1180 (9th Cir. 1988); 3 *J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition*, § 23.01[1] (rev. ed. 1994).

In other words, the issue framed is: would consumers be confused into thinking that the charitable giving to children carried out by Defendant originates from (or is associated with) Plaintiff, or vice versa? *Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 408 F. Supp. 1219 (D. Colo. 1976), *aff'd and award modified,* 561 F.2d 1365 (10th Cir. 1977), *cert. dismissed*, 434 U.S. 1052 (1978).

Plaintiff will show it can demonstrate a likelihood of success on the merits.


### 1. *Ownership and Validity*

Plaintiff was founded in 2003 by two San Francisco pediatric nurses at California Pacific

DOYLE LOW LLP

Medical Center ("CPMC"), Laura Euphrat RN and Joanne Davantes RN. Euphrat Decl. ¶ 2. LITTLE WISHES is a 501(c)(3) nonprofit organization, registered with the State of California, has a State Charity Registration Number with the California Attorney General's Office and files annual charitable tax returns. *Id.*

It solicits and receives donations nationally and internationally, and provides charitable giving at multiple Children's Hospitals at the rate of nearly two gifts per day (or 700 per year). Euphrat Decl. ¶ 3.

Plaintiff does not have a Federal Trademark Registration for LITTLE WISHES for its charitable giving, but that is not dispositive as to ownership of the LITTLE WISHES trademark. Rather trademark rights are created based on the <u>use</u> of a trademark, and those rights may then be perfected by a Federal Trademark Registration. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services").

It also bears noting that Defendant LITTLE WISH, only recently, filed a Federal Trademark Application for LITTLE WISH, although it knew well of Plaintiff's senior use of the trademark LITTLE WISHES, as here described. Euphrat Decl. ¶¶ 31-32, Exs. J-K thereto. LITTLE WISH was aware of LITTLE WISHES (Euphrat Decl. ¶ 21) on December 15, 2015 and signed a declaration stating:

> ... ***The signatory believes that to the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive***. The signatory being warned that willful false statements and the like are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements and the like may jeopardize the validity of the application or any registration resulting therefrom, declares that all statements made of his/her own knowledge are true and all statements made on information and belief are believed to be true.

"The obligation which the Lanham Act imposes on an applicant is that he will not make

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

DOYLE LOW LLP

1   knowingly inaccurate or knowingly misleading statements in the verified declaration forming a

2   part of the application for registration." *Bart Schwartz Int'l Textiles, Ltd. v. Fed. Trade Com.*,

3   289 F.2d 665, 669 (C.C.P.A. 1961).  That Defendant's declaration was false, is punishable, and

4   will render the Federal Registration No. 5,017,019, which recently issued on August 9, 2016,

5   ultimately invalid.  *Id.* [determining that the "at the time he verified the application… he knew

6   that others had the right to use this word in commerce" and "find[ing] that such a false statement

7   of fact in the declaration supports a holding that the registration in issue was obtained

8   fraudulently within the meaning of Section 14(c) of the Lanham Act and that it should be

9   cancelled."].

10          Further, LITTLE WISH, in an apparent effort to "hedge its bets" and distance itself from

11   LITTLE WISHES, filed another Federal Trademark Application for LITTLEWISH

12   FOUNDATION, which resulted in Registration No. 5,022,035, filed on January 4, 2016, issued

13   August 16, 2016.  Euphrat Decl. ¶ 32, Ex. K thereto.   The declaration contained in that

14   application is also false, for the same reasons.

15

16          **2.      *Likelihood of Confusion***

17          The Lanham Act protects against confusion of any kind, thereby encompassing both

18   traditional forward confusion, as well as reverse confusion (*Levi-Strauss & Co. v. Blue Bell,*

19   *Inc.,* 778 F.2d 1352 (9th Cir. 1985); *Big O Tire Dealers,* 408 F. Supp. at 1232; *McCarthy, at §*

20   23.10), and initial interest confusion, which may divert consumers away from the source of

21   intended marks (*Brookfield Commnc'n, Inc. v. West Coast Entm't Corp.,* 174 F.3d 1036, 1062

22   (9th Cir. 1999)**,** citing *Dr. Seuss*, 109 F.3d at 1405).  In evaluating likelihood of confusion, the

23   courts do not require proof of actual confusion but rather focus on a variety of factors,

24   commonly referred to as the *Sleekcraft* factors, which include:

25                  1)      similarity in appearance, sound and meaning;
                    2)      proximity of the goods and services;
26                  3)      the marketing channels used;
                    4)      strength of [LITTLE WISHES Trademark];
27                  5)      intention of [Defendant] in selecting and using [LITTLE WISH];

| | |
|---|---|
| 1 | 6)      evidence of actual confusion; |
| | 7)      likelihood of expansion of the product lines; and, |
| | 8)      degree of care likely to be exercised by the consumer. |

*AMF v. Sleekcraft Boats*, 599 F.2d 341, 352 (9th Cir. 1979); *see also, Levi-Strauss,* 778 F.2d at 1364; *Dr. Seuss, supra,* 109 F.3d at 1404; *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000); *Anheuser-Busch v. The Customer Co*., 947 F. Supp. 422, 424 (N.D. Cal. 1996), *citing E & J Gallo Winery v. Gallo Cattle Co.,* 967 F.2d 1280, 1290 (9th Cir. 1995).

        The eight-factor test is flexible and "some factors are much more important than others." *Brookfield,* 174 F.3d at 1054. In its analysis, the "court resolves doubts about the likelihood of confusion against the newcomer because the newcomer has the opportunity and obligation to avoid confusion with existing marks." *In re Chatam Int'l*, 380 F.3d 1340, 1345 (Fed. Cir. 2004) citing *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1265 (Fed. Cir. 2002).

### *(1) Similarity of the trademarks*

        Similarity of the trademarks has always been considered a critical question in the likelihood-of-confusion analysis. *GoTo.com*, 202 F.3d at 1205. Here, the trademarks used by Plaintiff (LITTLE WISHES) and Defendant (LITTLE WISH) are effectively identical— Defendant has merely changed the plural to the singular, such that Defendant's mark is wholly contained within Plaintiff's senior mark. There is no meaningful distinction between the singular and plural use of words. *Playboy Enter. v. Netscape Commc'n Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004). Identical lead words, as utilized here, foster confusion among consumers as well. *Century 21*, 846 F.2d at 1179.

DOYLE LOW LLP

Attention is directed to a screen shot from the TODAY SHOW interview, where the caption addresses "granting little wishes," using the words LITTLE WISHES:



**Image 3**. Today Show Screen Shot.  Euphrat Decl. ¶ 27; Exs. H & D.

Further, Liz Niemiec, uses the term LITTLE WISHES on the public description of her social media Instagram account immediately before link to Defendant's website.  Euphrat Decl. ¶ 27; Ex. I, thereto. Defendant is causing confusion by having placed the words LITTLE WISHES adjacent to a link that takes them to Defendant's website.  This is a foreseeable incident of confusion which Defendant has created by choosing a virtually identical name.  *Id.*

Trademark infringement is not avoided merely by adding a term, such as "FOUNDATION," to LITTLE WISH. The law does not permit distinctions without differences. *See, e.g., Citibank, N.A. v. Citibank Group, Inc.,* 724 F.2d 1540, 1547 (11th Cir. 1984) ("Citibanc of Alabama" is confusingly similar to "Citibank" when both are used for bank); *Surf Line Hawaii Ltd. V. Ahakuelo,* 13 U.S.P.Q.2d. (BNA) 1975, 1978-79 (D. Haw. 1989) ("Hawaiian Jams" is confusingly similar to "Jams" when both are used for T-shirts); *Henry Siegel Co. v. M&R Int'l Mfg. Co.,* 4 U.S.P.Q.2d. (BNA) 1154, 1161 (T.T.A.B. 1987) ("L.A. Chic" is confusingly similar to "Chic" when both are used for women's clothing).

Recipient families and donors can, and do, readily assume that LITTLE WISH and the

LITTLE WISH FOUNDATION are authorized, sponsored, and/or backed by Plaintiff LITTLE WISHES itself.

### *(2) Proximity of the goods and services*

The goods and services of LITTLE WISHES and LITTLE WISH are identical: accepting and administering charitable funds and gifts for pediatric patients. Euphrat Decl. ¶¶ 17-18, 33-34.

### *(3) Similarity of marketing channels*

The primary marketing channel used by LITTLE WISHES and LITTLE WISH is identical: The Internet and social media. LITTLE WISHES has been active on the Internet with a website since 2004, and is likewise active on Facebook. Euphrat Decl. ¶ 33. LITTLE WISHES' website was on the Internet six years before the creation of LITTLE WISH. *Id.* Plaintiff has received donations from 38 States, Washington D.C. and London. *Id.* at ¶ 12.

The 9th Circuit has found that the "[w]eb, as a marketing channel, is particularly susceptible to a likelihood of confusion since…it allows for competing marks to be encountered at the same time, on the same screen." *GoTo.com*, 202 F.3d at 1207. The convergent marketing channels and resulting exposure to the same general class of relevant users increase the likelihood of confusion. *Sleekcraft*, 599 F.2d at 353. Typing in LITTLE WISHES in virtually any search engine will confirm the similarity of these entities, and the confusion confronting a user.[1] *JayAIR Corp. v. Muka Indust.*, 33 U.S.P.Q.2d 1304, 1306 (C.D.Cal. 1994).

An additional marketing channel is hospitals, even more specifically, Children's Hospitals. Euphrat Decl. ¶ 34. Again, this marketing channel is identical for both parties.

---

[1] Plaintiff understands that Defendant has added a disclaimer on the bottom of its website as to it being different company from LITTLE WISHES. That disclaimer, as explained herein, has been ineffective.

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

DOYLE LOW LLP

### *(4) Strength of the LITTLE WISHES trademark*

When trademarks and services are almost identical "the strength of the mark is of diminished importance in the likelihood of confusion analysis." *Brookfield*, 174 F.3d at 1059 (citing *McCarthy,* § 11:76).

When LITTLE WISHES was founded in 2003, there was no competition for the charitable giving of small gifts to hospitalized children.[2] Euphrat Decl. ¶ 35. Since then, LITTLE WISHES has delivered almost 10,000 gifts and is already delivering gifts in 2017. *Id.* at ¶ 3. LITTLE WISHES was the recipient of the American Red Cross "Act of Kindness and Philanthropy Hero" in 2010. *Id.* at ¶ 36. It is an organization of some duration, known for its good works.

Here, LITTLE WISH knew of LITTLE WISHES when it adopted the LITTLE WISH trademark (Euphrat Decl. ¶ 21) and it has been personally notified of actual confusion by the filing of this lawsuit. Defendant's response was appearing on the TODAY SHOW, where the caption line, raising the confusion level to a "10," read as follows: "SHARE KINDNESS. GRANTING LITTLE WISHES THAT MAKE A BIG DIFFERENCE." Image 3, Today Show Screen Shot, *supra*; Euphrat Decl. ¶¶ 25-27; Exs. H &D, thereto.

In spite of this confusion, LITTLE WISH has decided to aggressively increase its use of the LITTLE WISH trademark, in blatant disregard for LITTLE WISHES' senior trademark rights. Bad intent, as evidenced by proof of copying, is further evidence of the strength of a trademark. *Audio Fidelity, Inc. v. High Fidelity Recording, Inc.,* 283 F.2d 551, 558 (9th Cir. 1960) ("There is no logical reason for the precise copying, save an attempt to realize upon a secondary meaning that is in existence."). LITTLE WISHES is a valid and strong trademark entitled to a broad scope of protection.

---

[2] As to larger gifting to hospitalized children, a familiar provider is the Make-A-Wish Foundation, which has historically granted elaborate wishes of children with life-threatening illnesses. LITTLE WISHES was contacted by the Make-A-Wish Foundation, to assure mutual understanding avoided confusion between the charities. This arrangement has been successful for over 14 years. Euphrat Decl. ¶ 35.

### (5) Defendant's intent in originally adopting the LITTLE WISH trademark

While proof of wrongful intent is not required for a finding of likelihood of confusion, Defendant here adopted and continues to use the LITTLE WISH trademark in bad faith. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d at 1178; *Earth Tech. Corp. v. Envtl. Research of Tech., Inc.*, 222 USPQ 585, 588 (C.D. Cal. 1983). See also, *Dr. Seuss*, 109 F.3d at 1403, n. 12 ("The law of unfair competition has its roots in the common-law tort of deceit: its general concern is with protecting consumers from confusion as to source.").

As a newcomer, Defendant had a duty to avoid choosing a name and trademark similar to LITTLE WISHES. *Century 21,* 846 F.2d at 1182. Instead, LITTLE WISH has aggressively increased its national exposure and filed Federal Trademark Applications, with false oaths, to further justify its actions.

Defendant is acting in a manner that exemplifies its lack of good faith in adopting and using the LITTLE WISH trademark.


### (6) Evidence of actual confusion

Actual confusion "is persuasive proof that future confusion is likely." *Sleekcraft*, 599 F.2d at 352. Here, we have evidence of actual confusion including:

- The interchangeable use of LITTLE WISHES and LITTLE WISH by Defendant (see Image 1, *supra*; Euphrat Decl. ¶ 19);

- HIPPA information mistakenly sent to LITTLE WISHES intended for LITTLE WISH (Euphrat Decl. ¶ 22);

- The volunteer that noted the confusion in the above referenced email (Euphrat Decl. ¶ 16, Ex. A thereto);

- The child at Children's Hospital in Los Angeles who did not get a gift, as the family was confused as to whom to contact (Euphrat Decl. ¶ 23); and.

- The actual confusion by the media (Image 3, *supra*;) and by donors contacting the wrong organization and subsequent activity on Plaintiffs social media outlets

following the Today Show (Euphrat Decl. ¶ 25-27).

Also of import is the legal doctrine discussed in this citation: "Recently in *Dr. Seuss*, [the Ninth Circuit] explicitly recognized that the use of another's trademark in a manner calculated "to capture initial consumer attention, even though no actual sale is finally completed as a result of the confusion, may be still an infringement."" *Brookfield*, 174 F.3d at 1062, citing *Dr. Seuss*, 109 F.3d at 1405. This is sometimes referred to as *initial interest confusion*. It considers circumstances where consumers looking for one business, especially when searching the web, can be easily diverted to another business, such that the second business is improperly benefiting from the first's goodwill. In the case of initial confusion, a consumer may be aware of the diversion, but linger at the other site anyway; whereas, in the case of actual confusion, the consumer is unaware that he or she has been diverted away. Both are protected against under trademark and unfair competition laws, which were enacted to protect against consumer confusion in the marketplace. *Brookfield*, 174 F.3d at 1063. Where, as here, the two names at issue are virtually identical, and the organizations provide the same services, this doctrine is most certainly applicable.

### *(7) Likelihood of expansion of the product lines*

The services offered by both parties are already identical. Some courts have found this factor simply "irrelevant" in the web context where the two goods or services are related and display on a search screen together. *Playboy Enter.*, 354 F.3d at 1029. Here, a web search of either mark renders a search screen with the Plaintiff and Defendant listed side-by-side.

It is understood that LITTLE WISH began in Indiana, and did not expand beyond that state until more recently, where direct competition and resulting confusion is being felt. Euphrat Decl. ¶ 18. Their intentional expansion is causing confusion and damage to the reputation and goodwill of the Plaintiff as there are operational and quality differences that exist between the parties. Euphrat Decl. ¶¶ 22, 30, 37.

For example, LITTLE WISHES does not provide, as gifts, movies with a rating beyond

PG13 or any type of video game that is violent. That is not the case for Defendant. *Id*. at ¶ 38. LITTLE WISHES also delivers multiple gifts to children with prolonged hospital stays. *Id*. It is unknown what, if any continuing services, Defendant provides. Both of these differences may cause consumer dissatisfaction and damage to the reputation and goodwill of Plaintiff. Euphrat Decl. ¶ 39.

Additionally, at least one child did not receive a wish due to the confusion created by Defendant. The consumer dissatisfaction and damage to LITTLE WISHES' reputation is apparent, but that the child was not comforted during his hospitalization is heartbreaking to LITTLE WISHES' founders and volunteers. *Id*.

Because LITTLE WISHES and LITTLE WISH now directly compete for donors and operate in the same Children's Hospitals (*e.g.* Euphrat Decl. ¶¶ 18, 23, 39), this factor weighs heavily in favor of a finding a likelihood of confusion.

### (8) *Likely degree of purchaser care*

When donors and volunteers hear of LITTLE WISHES, there is no traditional purchase for them to reference. Thus, donors and volunteers expect no competition, no market place confusion, and have no idea of the need for navigating through confusion as to which is the proper company to contact. This is the same for families with hospitalized children.

Even if families, donors and volunteers were unrealistically expected to exercise a reasonable degree of purchaser care, this is not possible where the marks are virtually identical. No reasonable amount of care will distinguish Defendant's infringing use of the LITTLE WISH trademark from the real LITTLE WISHES. *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1137 (2d Cir. 1979) as superseded by statute as stated in *Bristol Meyers Squibb Co. v. McNeil P.P.C. Inc.*, 973 F.2d 1033 (2d Cir. 1992) ("In some cases, of course, as where the products are identical and the trademarks are identical, the sophistication of buyers cannot be relied on to prevent confusion"); *McCarthy*, at § 23.97. Here, consumers simply assume that the two charitable organizations are the same or are related because the marks and missions are

identical.

### 3.  *Summary of Sleekcraft factors*

The evidence of use, ownership, and rights in the LITTLE WISHES trademark is overwhelming, including the secondary meaning which has been acquired in that trademark through Plaintiff's years of continuous use, promotion and charitable giving and its success of granting nearly 10,000 gifts to hospitalized children, coupled with Defendant's blatant disregard for Plaintiff's rights by knowingly, intentionally and deliberately copying LITTLE WISHES' trademark, as well as its most recent national expansion knowing of the resulting confusion.

As to likelihood of confusion, the factors weigh heavily in favor of the Plaintiff, as they tend to evince not just a likelihood of confusion, but a virtual certainty of actual and damaging confusion between Plaintiff's use of its LITTLE WISHES trademark and Defendant's use of the LITTLE WISH (with our without the word FOUNDATION). Defendant cannot prevail on a single factor, let alone prevail based on a balancing of all these factors.

### 4.  *Irreparable Injury*

Based on the above factors, Plaintiff has demonstrated that Defendant's continued infringing activity will result in a likelihood of confusion, such that irreparable harm may be presumed. *Metro Publ'g, Ltd. v. San Jose Mercury News*, 987 F.2d 637, 640 (9th Cir.1993); *See also Earth Tech. Corp.*, *supra*, 222 USPQ at 587 (C.D. Cal. 1983) ("Irreparable injury is normally presumed in cases of trademark infringement.... Harm is presumed to be irreparable because of the substantial likelihood of public deception and confusion.").

Plaintiff has used the LITTLE WISHES trademark since 2003, has registered its company in California as a 501(c)(3) company, files annual tax returns and has delivered almost 10,000 gifts to hospitalized children.

Plaintiff is the senior user of the LITTLE WISHES trademark. Its intellectual property rights are being knowingly and intentionally exploited by the Defendant. What makes this even

DOYLE LOW LLP

1  more egregious is that Defendant is knowingly increasing consumer confusion by its recent

2  activities, which are further misleading the relevant public into associating the LITTLE

3  WISHES trademark with Defendant.  Thus, it is a fair inference that Defendant is trying to

4  capitalize on Plaintiff's rights.

5        Irreparable damage is caused when an asset such as a company's intellectual property,

6  which has been fostered and nurtured, is subjected to the false perception that one party is offering

7  services originating solely from the other, or vice versa.  That is the case here.

8        Furthermore, a portion of Plaintiff's donations and new volunteers comes from referrals.

9  Euphrat Decl. ¶ 33.  A prospective donor or volunteer conducting an internet search to locate

10  Plaintiff may be (and has been) mistakenly diverted to Defendant, resulting in confusion that

11  Plaintiff may never be able to resolve.  *Big O Tire*, 408 F. Supp. 1219. Plaintiff has no way of

12  knowing how many have already been discouraged from donating or volunteering because they

13  were intentionally diverted, or mistakenly believed that LITTLE WISHES originates from, or is,

14  Defendant.

15        Other questions are: How many clients have contacted Defendant to donate believing they

16  are contacting the Plaintiff?  How many families have sought gifts from the Plaintiff, but then

17  been dissatisfied with Defendant being unable to meet their charitable gifting requests? Have they

18  blamed Plaintiff for that dissatisfaction? Such dissatisfied donors and families may never again

19  seek charitable services from Plaintiff, may unfairly criticize Plaintiff within the community, or

20  may decide not to donate to Plaintiff.  These questions exemplify the irreparable harm to

21  Plaintiff's reputation and goodwill which should be enjoined immediately. There is no reason not

22  to stop this confusion from continuing.

23

24  **B.  Alternative Standard for Preliminary Injunction.**

25        At the other end of the sliding scale of cases appropriate for preliminary injunction, a

26  plaintiff may establish that serious questions are raised and the balance of hardships tips sharply

27  in its favor. *Dr. Seuss*, 109 F.3d at 1396 ("These formulations are not different tests but

DOYLE LOW LLP

1   represent two points on a sliding scale in which the degree of irreparable harm increases as the

2   probability of success on the merits decreases. Under either formulation, the moving party must

3   demonstrate a significant threat of irreparable injury, irrespective of the magnitude of the

4   injury.")

5       Assuming *arguendo* that Plaintiff has not fully established that a likelihood of confusion

6   exists between Defendant and Plaintiff's respective uses of the LITTLE WISHES trademark,

7   Plaintiff submits that both of these factors are met in this case.

8

9              *1.      Serious Questions are Raised*

10      Whether serious questions are raised is the first factor in the alternate test for a preliminary

11  injunction. *Dr. Seuss*, 109 F.3d at 1404. Plaintiff submits that it has raised serious questions for

12  litigation regarding Defendant's and Plaintiff's respective uses of the LITTLE WISHES

13  trademark. Seriousness is highlighted by the actual consumer confusion. Here, Defendant's

14  recent actions in pursuing national attention elevate the seriousness of the concern for preventing

15  further consumer confusion.

16      Seriousness is indicated by the similarity of the marks alone. The simple visual and oral

17  comparison of LITTLE WISHES and LITTLE WISH shows that the marks are identical. That

18  similarity, paired with the parties' similar missions to grant wishes of hospitalized children,

19  prevents consumers from being able to tell the difference between the two organizations.

20      The fact that Defendant uses Plaintiff's LITTLE WISHES trademark interchangeably with

21  LITTLE WISH in its own advertising and website also indicates that there are serious litigation

22  questions. See Image 1, *supra*; Euphrat Decl. ¶¶ 19, 27. The facts show Defendant is benefitting

23  from Plaintiff's reputation and goodwill, with bad faith intent, and causing direct harm to Plaintiff

24  by doing so. Thus, the court should find that serious questions have been raised under many of

25  the *Sleekcraft* factors.

26

27

## 2. The Balance of Hardships Tips in Plaintiff's Favor

As to the second factor of the alternate test, failure to issue an injunction at this time will continue to erode the reputation and good will established by Plaintiff in its LITTLE WISHES trademark over the last fourteen years. Damages attributable to this loss are extremely difficult to calculate. Confusion is causing Plaintiff a tremendous hardship, risking the loss of its identity as a charitable organization, loss of donors and volunteers, and loss of the power of its LITTLE WISHES trademark to identify and distinguish its charitable giving. *See JayAIR*, 33 USPQ2d at 1308 ("Any losses caused by a failure to issue an injunction at this time would be difficult to fully compensate").

As discussed herein, Plaintiff is a charitable organization, operating for the benefit of hospitalized children, without salaried employees or corporate overhead, and without any substantial means of negating the harm caused, or correcting the confusion propagated by Defendant. Every donor, volunteer or family that experiences confusion impacts Plaintiff's ability to operate as a charity, and damages the ability of Plaintiff's to deliver charitable gifts to hospitalized children.

In contrast, very little, if any, harm will be imparted on Defendant by restraining it from continuing its use of the LITTLE WISH trademark during the pendency of this action. Defendant has only recently begun its national marketing campaign, and is in the beginning of its plan to develop a national brand for its charitable giving under the LITTLE WISH trademark. When Defendant participated in the TODAY SHOW interview, it did so knowing its LITTLE WISH trademark was not its own, and that a pre-existing mark already existed in favor of Plaintiff. Thus, Defendant will have brought upon itself any harm that will occur from the injunction

The only potential loss to Defendant is the cost associated with changing trademarks, and is therefore calculable. The *JayAIR* court held that the balance of hardships tips in the trademark owner's favor where the costs to change the trademark were calculable. *Id*. at 1308. Further, the costs of re-branding are lesser now than if Defendant is allowed to continue national advertising under the confusing marks LITTLE WISH or LITTLE WISH FOUNDATION.

1    As such, the balance of hardships tips in Plaintiff's favor, not the Defendant.

2

3    **V.     CONCLUSION**

4          The mission of charitable giving to hospitalized children is big enough for both Plaintiff

5    and Defendant.  Yet, a problem arises when a newcomer, in this case Defendant, decides to

6    obtain an illegal advantage, especially when the Defendant has had actual notice of the

7    Plaintiff's trademark, and then subsequently increases its infringing usage.

8          The most disappointing result of this trademark misappropriation has been the potential

9    mistaken belief that Plaintiff provides charitable giving originating solely from Defendant—

10   thereby deterring donors who are interested in supporting charitable giving that does not

11   originate from Defendant.  It jeopardizes the reputation and goodwill that Plaintiff has spent

12   over a decade nurturing.  This all harms Plaintiff, who has done nothing wrong.

13         As this Court and the Ninth Circuit have repeatedly stated:

14         A newcomer who has the entire material universe or, stated in other terms, a
           whole dictionary full of words, an encyclopedia full of proper names, or a world
15         atlas full of place names from which it could have chosen its name and trademark,
           has the duty to avoid the use of a trademark similar to an established one.
16

17   *Century 21*, 846 F.2d at 1182 (quoting *Citibank N.A., v. City Bank of San Francisco,* 206 USPQ

18   997, 1009 (N.D.Cal. 1980)); *Fleischmann Distilling Corp. v. Maier Brewing Co*., 314 F.2d 149,

19   158 (9th Cir. 1963).

20         By choosing to adopt, advertise and use a trademark that is nearly identical to Plaintiff's

21   LITTLE WISHES trademark, Defendant is flaunting Plaintiff's property rights.  Defendant falls

22   woefully short of fulfilling its duty to avoid infringement by adopting the LITTLE WISH

23   trademark, in connection with accepting and administering charitable funds and gifts for

24   pediatric patients.

25         The fact that Defendant is also expanding its use of LITTLE WISH, with knowledge of

26   the resulting confusion, is unconscionable.  It shows a brazen and willful disregard of the

27   negative effect that this confusion generates for children, their families, hospitals, volunteers

DOYLE LOW LLP

and donors. Defendant's actions have not only resulted in irreparable harm and damage to Plaintiff, but also to the people whom our trademark laws were meant to protect, in this case, the children, their families and donors.

Plaintiff has shown under both alternate standards that it is entitled to a preliminary injunction against Defendant, and respectfully requests this court grant its Motion to preserve the status quo.

Dated: January 20, 2017                    Respectfully submitted,

                                           DOYLE LOW LLP

                                            /s/ Richard P. Doyle, Jr.


DOYLE LOW LLP
3640 Mt. Diablo Boulevard, Suite 202
Lafayette, CA 94549
925.295.1805 telephone
925.253.1071 fax

Attorneys for Plaintiff
LITTLE WISHES